## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:20-CV-00467-CRS-CHL

**IVA MERRITT,**                                                                                          **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,[1]**                                               **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Iva Merritt ("Merritt").  Merritt seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.)  This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation.  (DN 11.)  Merritt and the Commissioner each filed a Fact and Law Summary. (DNs 12, 18.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

## I.     BACKGROUND

On or about April 10, 2017, Merritt filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on November 14, 2016.  (R. at 19, 92, 94, 125-26, 214-26.)  On April 11, 2019, Administrative Law Judge ("ALJ") D. Lyndell Pickett ("the ALJ") conducted a hearing on Merritt's application.  (*Id.* at 34-67.)  In a decision dated June 27, 2019, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled.  (*Id.* at 16-33.) In doing so, the ALJ made the following findings:

---

[1] As Kilolo Kijakazi is now the Acting Commissioner of Social Security in place of Andrew Saul, she is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d).

1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.  (*Id.* at 21.)

2.      The claimant has not engaged in substantial gainful activity since November 14, 2016, the alleged onset date.  (*Id.*)

3.      The claimant has the following severe impairments: degenerative disc disease, arthropathies, chronic obstructive pulmonary disease (COPD), carpal tunnel syndrome (CTS), fractures of upper extremities, and neuropathy.  (*Id.* at 21-22.)

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 23.)

5.      [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except frequent, not constant[,] handling, fingering or feeling with the right dominant hand.  She can perform occasional overhead reaching bilaterally.  She can tolerate occasional exposure to vibration and fumes, odors, dusts, gases, and poor ventilation.  (*Id.* at 23.)

6.      The claimant is capable of performing past relevant work as cashier, meat clerk, produce clerk, and companion.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  (*Id.* at 26.)

7.      The claimant has not been under a disability, as defined in the Social Security Act, from November 14, 2016, through the date of this decision.  (*Id.* at 28.)

Within his analysis at Finding No. 6, the ALJ also made alternative step five findings.  He concluded that considering Merritt's age, education, work experience, and residual functional capacity, there were jobs in significant numbers in the national economy that Merritt was capable of performing based on the vocational examiner's testimony.  (*Id.* at 27-28.)

Merritt subsequently requested an appeal to the Appeals Council, which denied her request for review on May 5, 2020.  (*Id.* at 1-6, 211-13, 344-49.)  At that point, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2020); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c),

Merritt is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Merritt

timely filed this action on June 30, 2020.  (DN 1.).

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities.

*See* 42 U.S.C. §§ 404-434, 1381-1383f.  An individual shall be considered "disabled" if he or she

is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2020).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to

whether the Commissioner's findings are supported by "substantial evidence" and whether the

Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's

decision if it is based on substantial evidence, even if substantial evidence would also have

supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir.

2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that

if the Court determines the ALJ's decision is supported by substantial evidence, the court "may

not even inquire whether the record could support a decision the other way").  However, "failure

to follow agency rules and regulations" constitutes lack of substantial evidence, even where the

Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

###### B.    Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim.  20 C.F.R. §§ 404.1520, 416.920 (2020).  In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

(4)    Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1509, 416.909 (2020).

performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Merritt's Contentions

Merritt challenged the ALJ's Finding Nos. 5-7.  (DN 12, at PageID # 931-37.)  Specifically, Merritt argued that the ALJ erred in determining her RFC by not providing a sufficient narrative discussion of her capability to perform sustained work, in evaluating her pain, in his treatment of a third-party function report in the record, and in his consideration of the medical opinion evidence in the record.  (*Id.* at 931-36.)  She also argued that the errors in ALJ's determination of her RFC caused errors at later steps.  (*Id.* at 936-37.)  The undersigned will address each of these arguments below.

### 1.    RFC

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c) (2020).  The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources.  20 C.F.R. §§ 404.1529, 416.929 (2020); 20 C.F.R. §§ 404.1545(a)(1)-(4), 416.945(a)(1)-(4).  Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations.  20 C.F.R. §§ 404.1520c, 416.920c (2020); 20 C.F.R. §§ 404.1529(a), 416.929(a).

Here, the ALJ found that Merritt had the residual functional capacity to perform medium work except that she could only frequently, not constantly, perform handling, fingering, or feeling with her right hand; only occasionally perform overhead reaching bilaterally; and tolerate only

occasional exposure to certain environmental hazards such as vibration, fumes, odors, dusts, gases, and poor ventilation. (R. at 23.) In support, the ALJ cited to Merritt's hearing testimony and description of her own limitations, her medical records, certain reports in the record, and the medical opinion evidence of record. (*Id.* at 23-26.) Merritt contended that the ALJ erred in determining that she had the RFC to perform medium work for multiple reasons, which the undersigned will address separately below. (DN 12, at PageID # 931-37.)

a)      **Narrative Discussion**

Merritt argued that the ALJ "failed to discuss her ability to perform sustained work activities in an ordinary work setting on a continuing basis with citations to the record and in terms that [allow] a reviewer [to] understand his reasoning," citing SSR 96-8p. (*Id.* at 933, 931.) She argued that the ALJ failed to take the record as a whole and "tak[e] into account whatever fairly detracts from its weight." (*Id.* at 932.) SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996). It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual. *Id.* at 34,476-77. Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull. *Id.* at 34,477. Nonexertional limitations relate to an individual's potential postural, manipulative, visual, communicative, and mental limitations and ability to tolerate various environmental factors. *Id.* However, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (per curiam); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

Merritt disputed the ALJ's conclusions regarding her ability to perform the reaching, handing, fingering, and bending required for medium work.  (DN 12, at PageID # 932-33.) Medium work, by definition, involves lifting up to 50 lbs at a time; frequent (one-third to two-thirds of time) lifting and carrying of up to 25 lbs; standing and/or walking for six hours in an eight-hour workday; using arms and hands to grasp, hold, and turn objects; and frequent bending and stooping requiring flexibility of the knees and torso.  20 C.F.R. §§ 404.1567(c), 416.967(c) (2020); SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

In support of his determination of Merritt's RFC, the ALJ cited Merritt's own testimony, several reports in the record, portions of her medical records, and the medical opinion evidence of record.  (R. at 23-26.)  The ALJ noted her own testimony that her carpal tunnel syndrome, back, and hip problems limited her ability to work and caused her difficulty with "lifting, squatting, bending, standing, reaching, sitting, kneeling, stair climbing, and using her hands."  (*Id.* at 24 (citing *id.* at 238-48, 261-68, 279-86, 301-09).)  He cited Merritt's own testimony that "[s]he was not good at fine manipulation, dropped things, had limited strength in the left arm, and could lift 15 pounds at most."  (*Id.* at 24.)  He recounted that she reported being able to take care of her cat, prepare simple meals, do light chores (e.g. sweeping, dusting, making the bed), drive, shop, manage finances, read, watch TV, write, play handheld and video games, go to the library, and use the telephone.  (*Id.* (citing *id.* at 261-68, 279-86, 301-09).)  He noted her testimony that she has worked as a cashier eighteen hours per week since June 2018.  (*Id.* (citing *id.* at 233-34).) Regarding her activities of daily living, the ALJ concluded, "These statements are somewhat inconsistent with her testimony that she had pain with sitting, could lift 15 pounds at most, and was not good at fine manipulation.  These inconsistencies do little to support her allegations of disabling symptoms."  (*Id.* at 24.)

The ALJ then cited to numerous pieces of medical evidence that he felt supported his RFC determination.  He noted that Merritt had a history of left ulnar fracture with subsequent routine healing.  (*Id.* at 24 (citing *id.* at 646).)  He recounted that in March 2017, she demonstrated positive Tinel sign and pressure over her carpal canal bruises as well as tingling and numbness in the radial distribution of her right hand though her physical exam was otherwise normal.  (*Id.* at 24 (citing *id.* at 421).)  He noted that she was diagnosed with bilateral carpal tunnel syndrome.  (*Id.*)  He then emphasized that in April 2017, she was assessed to have cervical degenerative disc disease and that cervical x-rays showed advanced degenerative disc disease at C5-6 and C6-7 with moderate neural foraminal spurring.  (*Id.* (citing *id.* at 415).)  He noted that at a July 6, 2017, examination, physical consultative examiner ("CE") Dr. Jeffrey A. Uzzle, M.D., ("Dr. Uzzle") found that Merritt had normal gait, heel/toe walking, deep knee bend, and tandem walking as well as full range of motion, negative straight leg raise, 5/5 strength, intact sensation and normal reflexes.  (*Id.* at 24 (citing *id.* at 438-56).)  The ALJ summarized that Dr. Uzzle "believed th[at] [Merritt]'s subjective complaints were out of proportion to objective findings."  (*Id.*)  The ALJ noted that as of October 2017, Merritt was taking Gabapentin for her neck pain but that her physical examination was normal at that time.  (*Id.* at 25 (citing *id.* at 464-65).)  He generalized that her physical examinations were "largely normal" throughout early 2018 except for sacroiliac tenderness and complaints of chronic pain.  (*Id.* at 25 (citing *id.* at 554, 565, 582, 592, 701, 714-15).)  He noted that in April 2018, Merritt demonstrated steady gait and a full range of motion in her shoulders and arms.[3]  (*Id.* at 25 (citing *id.* at 755).)  He cited that imaging in April 2018 demonstrated mild lumbar degenerative changes but that Merritt told her physician that non-opioid medication

---

[3] The ALJ stated in his decision that Merritt demonstrated "dull range of motion of the bilateral shoulders/arms."  (*Id.* at 25.)  The undersigned presumes this reference is a typographical error because the record cited by the ALJ stated that Merritt demonstrated "full" range of motion.  (*Id.* (citing *id.* at 755 ("[F]ull rom to shoulders/arms.")).)

managed her pain adequately.  (*Id.* at 25 (citing *id.* at 759, 778).)  He noted that she attended physical therapy from May to June 2018.  (*Id.* at 25 (citing *id.* at 597-642).)  He recounted that Merritt received right carpal tunnel injections in March and June 2018 and that as of the latter date her physician reported no thenar atrophy, no CMC grind or tenderness, negative Carpal Tinel's, and negative compression.  (*Id.* at 25 (citing *id.* at 656, 662-63).)  She also had positive cervical tenderness and spasms and decreased cervical range of motion; however, her gait and strength were normal.  (*Id.* at 25 (citing *id.* at 779).)  The ALJ summarized that as of September 2018, Merritt was experiencing pain that was likely related to fact joint arthropathy and that imaging in November 2018 demonstrated worsening cervical degenerative changes.  (*Id.* at 25 (citing *id.* at 770, 795).)  He also noted that a December 2019 neurodiagnostic study was abnormal and showed mild right carpal tunnel syndrome and mild left cervical radiculopathy as well as acute/active denervation.  (*Id.* at 25 (citing *id.* at 875).)

The ALJ also cited to the medical opinion evidence of record.  He rejected the opinions of Huey Thien, M.D., and William Moss, MD., ("Dr. Moss") both of whom released Merritt to regular duty without restrictions because the ALJ though the record supported that Merritt "ha[d] at least some significantly limiting limitations."  (*Id.* at 25 (citing *id.* at 551. 649, 661, 667, 677).)  He found the opinion of Dr. Uzzle, who opined that Merritt could perform medium work, somewhat persuasive because "it [wa]s consistent with consultative examination findings and treatment notes."  (*Id.* at 25 (citing *id.* at 438-56).)  However, the ALJ noted that more recent medical records indicate she has greater postural limitations than opined by Dr. Uzzle.  (*Id.* at 25-26.)  He found the opinions of the state agency medical consultants, Larry McNeil, M.D., and Robert Culbertson, M.D., somewhat persuasive because the consultants' findings that Merritt could perform medium work, could perform frequent handling and fingering with her right hand,

and should avoid concentration exposure to vibration were consistent with the medical records, neurodiagnostic studies, and findings by CE Dr. Uzzle.  (*Id.* at 26 (citing *id.* at 75-77, 87-89, 105-07, 120-22).)  However, he noted that those opinions did not adequately account for any limitations caused by Merritt's breathing.  (*Id.*)  Based on the foregoing, the undersigned finds that the ALJ's narrative discussion sufficient for purposes of SSR 96-8p.  *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116-18 (6th Cir. 2010) (concluding that ALJ complied with SSR 96-8p where he provided an "extensive discussion" of the evidence in arriving at the applicant's RFC).  Merritt may disagree with the ALJ's substantive conclusion, but the undersigned finds no procedural violation in his analysis.

Merritt pointed to certain evidence in the record that she claimed that the ALJ failed to consider in whole or in part or that, in her view, supported greater limitations than those found by the ALJ.  (DN 12, at PageID # 932, 935.)  As a starting point, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").  Contrary to Merritt's assertion, the ALJ did cite to a number of the records she emphasized in her brief including an April 11, 2017, visit to Mountain People's Health Council (*compare* R. at 24 (citing *id.* at 415), *with* DN 12, at PageID # 932, 934); March 19, 2018, and May 14, 2018, visits with her orthopedic surgeon, Dr. Moss (*compare* R. at 25 (citing *id.* at 554, 592), *with* DN 12, at PageID # 935); her physical therapy records (*compare* R. at 25 (citing *id.* at 597-642), *with* DN 12, at PageID # 933-35); a June 1, 2018, visit to API Louisville (*compare* R. at 25 (citing *id.* at 779), *with* DN 12, at

PageID # 935); her November 2018 MRI (*compare* R. at 25 (citing *id.* at 770), *with* DN 12, at PageID # 932, 935); and a December 2018 electrodiagnostic study (*compare* R. at 25 (citing *id.* at 875), *with* DN 12, at PageID # 935).  While the ALJ may have sometimes mentioned different information contained within a particular page of the record than that cited by Merritt, his citation to the individual records evidences that he considered the same.

Merritt argued that the ALJ should have specifically addressed an "opinion" from her doctor that he "thinks that the pain along her clavicle is coming out of her neck."  (DN 12, at PageID # 932).  As part of her April 7, 2017, visit with Dr. Moss, Dr. Moss summarized the results of c-spine x-rays that showed degenerative disc disease and then stated, "Have discussed the case with the patien [*sic*] she needs an MRI but she has noinsurance [*sic*].  I think that the pain along her clavicle is coming out of her neck.  She verbalizes understanding."  (R. at 412, 415.)  The ALJ cited the x-ray results but did not specifically discuss Dr. Moss's supposition regarding the location of Merritt's pain.  (*Id.* at 25 (citing *id.* at 415).)  Merritt cited no authority to support that Dr. Moss's statement constitutes an opinion that ought to have been considered by the ALJ.  A medical opinion is defined by the applicable regulations as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions."  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2020).  The statement regarding where Dr. Moss thinks her pain is coming from does not include any limitations or restrictions and, thus, is not an opinion as defined by the applicable regulations.

Merritt also argued that the ALJ did not address her knee pain.  (DN 12, at PageID # 935.)  While the ALJ did not specifically discuss knee pain or conditions, he did cite to other portions of Dr. Moss's records evidencing his consideration of the same.  (R. at 25 (citing *id.* at 554, 582, 592).)  Given that the ALJ considered and cited the records, the undersigned finds that the absence

of any discussion or limitations related to Merritt's knee from his RFC determination evidences his rejection of limitations in that area.  While knee pain and impairments would be related to her ability to perform the requirements of medium work, Merritt pointed to no provider that placed any limitations on her ability to bend and stoop.  The mere existence of a diagnosis is insufficient to demonstrate related functional limitations.  *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)) ("But not every diagnosable impairment is necessarily disabling."); *Kennedy v. Astrue*, 247 F. App'x 761, 767 (6th Cir. 2007) ("[A] mere diagnosis of obesity does not establish either the condition's severity or its effect on [claimant]'s functional limitations.").  Accordingly, the undersigned finds Merritt's arguments related to her knee pain to be without merit.

To the extent that Merritt challenged the ALJ's generalizations or summations of the record, such as his conclusion that the physical examination findings were "largely normal," the undersigned finds Merritt's arguments unavailing.  An examination of the records, including those cited by the ALJ, substantiates that his RFC determination is based on substantial evidence and not a parsed review or incorrect generalizations regarding the record.  After fracturing her left ulna in April 2016, by July 22, 2016, Merritt was released from any work restrictions.  (R. at 398, 484, 504.)  Despite her complaints, she was again released by various providers, including orthopedic surgeon Dr. Moss, to regular duty without restriction on November 17, 2017; February 27, 2018; March 16, 2018; April 16, 2018; June 22, 2018; and August 17, 2018.  (*Id.* at 551-52, 582, 649, 661, 667, 683, 690, 696.)  Despite her diagnoses of carpal tunnel syndrome and degenerative disc disease (*id.* at 361, 412, 451, 464, 467, 564, 644, 705, 716, 720, 720, 759, 761, 770, 778, 875), the record contains findings of Merritt presenting for examination in no acute distress (*id.* at 401, 421, 430, 465, 469, 472, 565, 645, 651, 657, 663, 701, 709, 714, 718, 722, 779, 784, 789, 794); with

normal movement of her extremities (*id.* at 465, 565); normal or full range of motion (*id.* at 401, 430, 535, 538, 542, 582, 592, 652); normal or steady gait (*id.* at 430, 535, 538, 542, 701, 710, 715, 719, 755, 779, 784, 789, 794); or other normal findings regarding her muscle strength, reflexes, etc. (*id.* at 550, 552, 554, 592, 710, 715, 779, 784, 789, 794).   These findings are consistent with the opinion evidence cited by the ALJ regarding to what extent her conditions affect Merritt's functional limitations.   Merritt cited to no evidence that any provider ever placed functional limitations on her that had not been released as of the date of the ALJ's decision or that were greater than those placed upon her by the ALJ.   Thus, the undersigned finds that Merritt's attempts to point to abnormal findings in the record do not undermine the ALJ's decision.   Merritt's arguments regarding the ALJ's RFC determination and the records on which she relies amount to nothing more than an attempt to point to substantial evidence in the record that supports a conclusion opposite the one reach by the ALJ.   The Court is not permitted to engage in this inquiry. *See Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (noting that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support the opposite conclusion").

Accordingly, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence and in accordance with the applicable regulations.

### b)      Pain

Merritt argued that the ALJ improperly assessed her testimony regarding her pain and discounted her credibility.  (DN 12, at PageID # 932-34.)  Though Merritt uses the term credibility, that term is not used by the regulations.  Instead, the regulations note that a claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she

is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work.   20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  In doing so, the ALJ should consider a number of factors including a claimant's daily activities, effectiveness of any medication taken to relieve symptoms, and any side effects of that medication.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929) ("Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.").  However, the regulations only require an ALJ to *consider* the pertinent factors; they do not require the ALJ to discuss all the factors in his or her opinion.  *See Dutkiewicz v. Comm'r of Soc. Sec.,* 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [claimant]'s work history when assessing his credibility . . . .").

As noted above, the ALJ cited to function reports in the record and determined that Merritt's level of activity was inconsistent with her subjective complaints.  (R. at 24.)  Merritt argued that the ALJ's reliance on the function reports in the record as opposed to asking questions regarding her daily activities at the hearing was in error.  (DN 12, at PageID # 933.)  However,

Merritt cited no authority to support that this was error except SSR 96-8p, which, as explained above, addresses the requirement that an ALJ provide a narrative discussion to support his or her determination of a claimant's RFC.  Merritt provided no citation to the portion of the ruling that supported her claim.  Merritt likewise cited no examples of how her hearing testimony was inconsistent with the function reports relied upon by the ALJ.  At the hearing, her attorney indicated in his opening statement that Merritt has "a difficult time with her [activities of daily living]." (R. at 38.)  In response to the ALJ's questions, she indicated that she works fifteen to eighteen hours per week as a cashier and works either four-hour or six-hour shifts.  (*Id.* at 41.)  She testified that she lifts five to ten pounds and is on her feet but stands on a rubber mat, which helps.  (*Id.* at 42.)  In response to questioning from her attorney, she testified that her shifts make her tired, she "do[es] everything a lot slower," and it "[t]akes [her] a lot longer to do simple things."  (*Id.* at 43-44.)  She indicated that she "drop[s] things constantly" and has to take breaks when doing tasks requiring fine manipulation, like writing a letter.  (*Id.* at 49-50.)  She testified that she is not capable of holding or squeezing very much or lifting greater than 15 lbs.  (*Id.* at 50.)  In response to questioning from her attorney regarding her daily activities, she stated that "what [she] used to could [*sic*] do in one day, might take [her] two weeks" and that she doesn't like to and is afraid to drive given her limitations.  (*Id.* at 51-52.)

While the ALJ did not explicitly cite to the hearing transcript in his decision, he did cite her testimony that "[s]he was not good at fine manipulation, dropped things, had limited strength in the left arm, and could lift 15 pounds at most."  (*Id.* at 24.)  He also relied on the function reports in the record in which Merritt reported being able to take care of her cat, prepare simple meals, do light chores (e.g. sweeping, dusting, making the bed), drive, shop, manage finances, read, watch TV, write, play handheld and video games, go to the library, and use the telephone.  (*Id.* (citing *id.*

at 261-68, 279-86, 301-09).)  A review of the reports cited by the ALJ demonstrates that Merritt likewise indicated therein that she "take[s] [her] time doing whatever [she] may need to," has to go about her personal care slow, takes frequent breaks, shopping takes hours, and dressing "take[s] much longer than it used to."  (*Id.* at 262, 264, 280, 302.)  Accordingly, to the extent Merritt attempts to argue that her hearing testimony supported greater limitations in her activities of daily living than indicated in her function reports, the undersigned finds this unsupported by the comparison of the two.  The undersigned finds that ALJ's decision does not misrepresent either the testimony or evidence of record regarding her daily activities.

Ultimately, the ALJ concluded that Merritt's testimony regarding her limitations and her activities of daily living were inconsistent and that "[t]hese inconsistencies do little to support her allegations of disabling symptoms."  (*Id.* at 24.)  Based on the evidence above, the undersigned finds no error in this conclusion.  Merritt has likewise failed to demonstrate that the same does not comport with the applicable regulations.

**c)      Third Party Function Report**

Merritt argued that the ALJ improperly dismissed the third-party function report submitted by her daughter without any supporting citation to the evidence on which he relied.  (DN 12, at PageID # 936.)  The ALJ noted in his decision that Merritt's daughter had submitted a third-party "function report in which she stated th[at] [Merritt] was unable to hold a fork for very long and could not sit or stand for hours at a ti[m]e."  (R. at 25 (citing *id.* at 287-95).)  The ALJ concluded that the report was not persuasive because it was "inconsistent with numerous activities of daily living and largely benign treatment notes" and because Merritt's daughter was "not an acceptable medical source."  (*Id.*)  Though required to consider all evidence, the ALJ is not required to include any discussion of how he "considered evidence from nonmedical sources" in his decision.  20

16

C.F.R. §§ 404.1520c(d), 416.920c(d).  Thus, the undersigned finds no procedural error in the ALJ's failure to cite to specific evidence in support of his conclusion.  Additionally, given the other specific citations to the medical evidence and record evidence regarding Merritt's activities of daily living in his decision and discussed above, the evidence the ALJ is referencing is obvious and renders his analysis capable of meaningful review.  His citation to the third-party function report also evidences that he did consider the report, as required.  20 C.F.R. §§ 404.1545, 416.945.  The undersigned finds that the ALJ's discussion or the third-party function report at issue was supported by substantial evidence and in compliance with the applicable regulations.

### d)    Opinion Evidence

Merritt also argued that the ALJ erred in his assessment of certain opinion evidence in the record.  (DN 12, at PageID # 934-36.)  The new regulations for evaluating medical opinions are applicable to Merritt's case because she filed her application after March 27, 2017.  Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[4]  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead,  an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c).  The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions."  20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2).  However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he

---

[4] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2020).

or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[5] specialization, and other factors.[6] 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2). Where two medical opinions reach different conclusions but are equally "well-supported . . . and consistent with the record," the ALJ is required to state how he or she considered the other three factors in making his or her decision. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (to be published) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source.

---

[5] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[6] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

The undersigned will address Merritt's arguments regarding the different medical opinions in the record separately below.

### (1) Dr. Uzzle

Merritt argued that the ALJ erred in relying on the report of CE Dr. Uzzle because the same did not comply with 20 C.F.R. § 404.1517, 20 C.F.R. § 404.1519n(e), and 20 C.F.R. § 404.1520c(b).  (DN 12, at PageID # 934, 936.)  She also challenged the ALJ's substantive reliance on Dr. Uzzle's opinion.  (*Id.* at 934-35.)

20 C.F.R. §§ 404.1517, 416.917 provide that where a CE is requested,  the Social Security Administration ("SSA") will "give the examiner any necessary background information about [a claimant]'s condition."  20 C.F.R. §§ 404.1517, 416.917 (2020).  Merritt contended that the SSA failed to give Dr. Uzzle any documents containing "objective information for his opinion on the existence and extent of her neck and upper extremity conditions" and in particular the "2017 and 2018 imaging" records.  (DN 12, at PageID # 934.)  Dr. Uzzle's July 6, 2017, report indicates that he considered and reviewed the records provided by the SSA but does not explicitly list what those

records were.  (R. at 449.)  Given his report's date, the SSA could not have provide any records or imaging from the latter half of 2017 or 2018 that were not yet in existence, and the undersigned rejects Merritt's arguments regarding those records post-dating Dr. Uzzle's examination.  Based on the undersigned's review of the records, the only 2017 imaging records that Dr. Uzzle could have had the benefit of examining were the records from the April 2017 spinal x-rays that resulted in a diagnosis of degenerative disc disease being added to her active problems.  (*Id.* at 412-15.) While it is unclear if those imaging records were provided to Dr. Uzzle, he did note in his analysis that she alleged back problems and had chronic pain in her neck and back.  (*Id.* at 449, 451.) Likewise, Dr. Uzzle's report indicated that he "obtained" chest and hip x-rays, noting that her hip "ha[d] never been evaluated or treated."  (*Id.*)  He also explicitly mentioned her carpal tunnel syndrome as being part of her past medical history, evidencing that at least some of the records he was provided were regarding and/or documented the same.  (*Id.*)  Dr. Uzzle then based his opinion on the records provided and his own physical examination of Merritt.  (*Id.* at 438-56.)

Under these circumstances, the undersigned finds that Merritt has failed to demonstrate a violation of 20 C.F.R. §§ 404.1517, 416.917.  While "necessary background information" certainly includes medical records, Merritt has not demonstrated that no medical information was provided to Dr. Uzzle.  In *Brantley v. Comm'r of Soc. Sec.*, 637 F. App'x 888 (6th Cir. 2016), the Sixth Circuit reversed and remanded a case based on noncompliance with 20 C.F.R. § 404.1517 where one CE received "no objective medical information in connection with his examination" and another CE "received only the results of [the other CE]s physical exam before conducting his own examination."  *Id.* at 890.  The Sixth Circuit found that "necessary background information" within the meaning of the regulation includes medical records, citing in support to the Program Operations Manual System ("POMS") and Hearings, Appeals and Litigation Law Manual ("HALLEX"), both

of which contained provisions referencing providing medical records to CEs.  *Id.* at 894-95 (citing Soc. Sec. Admin., *DI 22510.017 Consultative Examination (CE) Appointment Notice* and Soc. Sec. Admin., *Consultative Examinations and Tests, Hearings, Appeals, and Litig. Law Manual*). The Sixth Circuit concluded that records related to a particular event should have been provided to the CEs.  *Id.* at 895.  It reasoned, "[L]ack of medical records . . . can impair the examiner's ability to present his conclusions with greater precision and confidence or bolster them with references to the medical evidence."  *Id.* at 896.  Relying on *Brantley*, other district courts that have remanded for a violation of 20 C.F.R. §§ 404.1517, 416.917 have likewise done so where *no* medical records were provided to a CE.  *See, e.g.*, *Goppert v. Berryhill*, No. 3:16-CV-02739, 2018 WL 513435, at *11 (M.D. Tenn. Jan. 23, 2018), *report and recommendation adopted*, No. 3:16-CV-0239, 2018 WL 1138533 (M.D. Tenn. Mar. 1, 2018) (reversing and remanding where "the ALJ did not provide any medical records or x-rays to [the CE] to review."); *Barnett v. Berryhill*, No. 3:16-CV-00279, 2017 WL 2537362, at *4 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 3:16-CV-279, 2017 WL 4281126 (S.D. Ohio Sept. 27, 2017) ("Without background or medical records, including treating physician [ ] records, the ALJ failed to meet his mandatory obligation to provide [the CE] with 'necessary background information.'"); *McCarter v. Berryhill,* No. 3:16-CV-385-CCS, 2018 WL 327765, at *7 (E.D. Tenn. Jan. 8, 2018) (reversing and remanding where CE was provided no records).  Unlike in *Brantley* and the other opinions cited above, Dr. Uzzle was not provided with *no* objective medical evidence.  He was provided with an unknown number of medical records that based on his analysis did provide some history regarding Merritt's upper extremity and other conditions.  In light of this, Merritt has not demonstrated that it was error for the ALJ to fail to provide *all* of her medical records to Dr. Uzzle. In particular, neither her brief nor the record even clarifies whether the imaging records about

which she specifically complains were in the possession of the ALJ to be provided to Dr. Uzzle as of the time of the referral.  Given the close proximity between the two, the undersigned considers this fatal to Merritt's argument.

Merritt also claimed that the ALJ should not have relied on Dr. Uzzle's examination because his report was not personally signed as required by 20 C.F.R. § 404.1519n(e).  (DN 12, at PageID # 934.)  20 C.F.R. §§ 404.1519n(e), 416.919n(e) provide:

> (e) Signature requirements. All consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. This attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents and for the conclusions, explanations or comments provided with respect to the history, examination and evaluation of laboratory test results. The signature of the medical source on a report annotated "not proofed" or "dictated but not read" is not acceptable. A rubber stamp signature of a medical source or the medical source's signature entered by any other person is not acceptable.

20 C.F.R. §§ 404.1519n(e), 416.919n(e) (2020).  While the undersigned acknowledges that none of the signature lines on Dr. Uzzle's report contain physical signatures, one of the pages in the exhibit containing Dr. Uzzle's report is an "Electronic Records Express Attestation" that states that "[t]his document was electronically signed."  (R. at 455.)  The document states that on Monday, July 10, 2017, at 09:25:57 EDT, sender "Uzzle MD, Jeffrey" electronically signed the following affirmation:

> I am certifying under penalty of perjury, that I have been authorized or contracted by the Disability Determination Services to examine the claimant named in the attached, and produced a consultative examination report for that claimant.  The report is accurate.  By click on the "Agree" button below, I am certifying that I personally conducted, or personally participated in conducting, the consultative examination and have electronically signed the report contained within.

(*Id.*)  Merritt neither acknowledged the existence of this electronic signature page nor provided any authority to support that it was not sufficient to meet the purposes of the regulation.  Indeed, it appears other district courts have found such electronic signatures compliant with 20 C.F.R. §§

404.1519n(e), 416.919n(e).  *See Smith v. Comm'r of Soc. Sec.*, No. 6:17-CV-1084-ORL-TBS, 2018 WL 1940697 (M.D. Fla. Apr. 25, 2018) (collecting cases).  Additionally, it appears that the POMS specifically contemplates that CE reports may be signed electronically and accompanied by the type of attestation present in this case.  POMS DI 22510.015(C)(1) provides that "acceptable CE report signatures are: . . . electronic signature attestations submitted through the Electronic Records Express (ERE) attestation process."  Soc. Sec. Admin., *DI 22510.015 Information for Consultative Examination (CE) Source*, SSA POMS DI 22510.015(C)(1), https://secure.ssa.gov/POMS.NSF/lnx/0422510015 (last visited Feb. 4, 2022).  A subsequent section of the same provision then provides,

> Registered CE sources submit electronically signed copies of CE reports using the ERE "click and sign" feature. This produces an attestation that is electronically linked to, and included with, the CE report in the certified electronic folder (CEF). The ERE attestation reads:
>
>> "I am certifying, under penalty of perjury, that I have been authorized or contracted by the Disability Determination Services to examine the claimant named in the attached, and produced a consultative examination report for that claimant. The report is accurate. By checking the "I have read and agreed with the above" checkbox below, I am certifying that I personally conducted, or personally participated in conducting, the consultative examination and have electronically signed the report contained within."

*Id.* at DI 22510.015(C)(3).  Accordingly, the undersigned finds that Merritt has failed to demonstrate a violation of 20 C.F.R. §§ 404.1519n(e), 416.919n(e).

Merritt also argued that the ALJ failed to comply with 20 C.F.R. §§ 404.1520c(b), 416.920c(b) because he "did not provide an explanation for a reviewer to understand his reasoning" and could not because in Merritt's view, Dr. Uzzle's opinion "fails the supportability requirement."  (DN 12, at PageID # 936.)  After citing to the physical findings from Dr. Uzzle's examination, the ALJ found Dr. Uzzle's opinion that Merritt could perform medium work

"somewhat persuasive." (R. at 25.) The ALJ found that Dr. Uzzle's opinion was consistent with his own examination findings and treatment notes but that "more recent neurodiagnostic evidence, treatment notes, and hearing testimony indicate that she is even more limited in her ability to use her hands and perform postural activities than this opinion described." (*Id.*) Accordingly, the ALJ imposed greater limitations in those areas than prescribed by Dr. Uzzle. (*Compare id.* at 23-26, *with* 438-56.) The undersigned finds that while the ALJ did not cite to any particular treatment notes immediately following his statement, his RFC analysis when read as a whole makes clear what treatment notes he is referencing: those summarized previously in his opinion and in the instant report and recommendation above. His decision thus include a sufficient statement regarding the supportability and consistency of Dr. Uzzle's opinion to comply with the applicable regulations. Therefore, the undersigned finds no violation of 20 C.F.R. §§ 404.1520c(b), 416.920c(b) in the ALJ's discussion of Dr. Uzzle's opinion.

Finally, Merritt argued that it was error for the ALJ to rely on Dr. Uzzle's opinion because Dr. Uzzle did not have all the objective evidence. (DN 12, at PageID # 936.) This argument is unpersuasive. As the Commissioner notes in her brief, there will always be a gap between the time the agency experts review the record and give their opinion and the time the hearing decision is issued. *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009). "Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id.* Here, the ALJ provided an extension discussion of the medical evidence that post-dated Dr. Uzzle's opinion and even imposed greater limitations to account for developments in the record. The undersigned finds that Merritt has failed to demonstrate that the ALJ's limited reliance on Dr. Uzzle's opinion was inappropriate under those circumstances.

### (2)    Larry F. Brown, Ph.D.

Merritt argued that the ALJ in his assessment of the opinion of psychological CE Larry F. Brown, Ph.D., ("CE Brown").  (DN 12, at PageID # 936.)  CE Brown examined Merritt on July 14, 2017.  (R. at 457.)  He noted that she did not have a history of psychiatric treatment.  (*Id.*)  He diagnosed her with depression and found that she had a mild to moderate limitation in her able to concentrate and pay attention, a moderate limitation in her ability to understand and remember directions and engage in social interaction; and a moderate to marked limitation in her ability to adapt.  (*Id.* at 459-60.)  The ALJ found CE Brown's opinion not persuasive because it was "inconsistent with treatment notes, reported activities of daily living, hearing testimony, and ability to perform unskilled work, which indicate th[at] Merritt has no more than mild mental limitation." (*Id.* at 25.)  Merritt repeated her argument, rejected above, that the record did not support the ALJ's conclusions regarding Merritt's activities of daily living.  (DN 12, at PageID # 936.)  Because the undersigned has already found the ALJ's assessment of Merritt's activities of daily living and the record as a whole to be supported by substantial evidence, the undersigned rejects her derivative argument on the same basis here.  Thus, it was not error for the ALJ to incorporate his assessment of Merritt's daily activities and the medical evidence in his consideration of CE Brown's opinion. The undersigned finds no procedural or substantive violation in the ALJ's analysis.

### (3)    State Agency Medical Consultants

Merritt argued that it was error for the ALJ to rely on the opinions of the state agency medical consultants because of the "significant amount of medical evidence" in the record post-dating their opinions.  (DN 12, at PageID # 936.)  The undersigned has already rejected a similar argument above with respect to Dr. Uzzle's opinion.  As with Dr. Uzzle's opinion, while the state agency medical consultants did not have the benefit of all of the medical evidence in the record,

the ALJ adopted additional limitations to accommodate Merritt's asthma.  (R. at 74.)  The undersigned finds no error in his assessment of the state agency medical consultants' opinions.

### (4)      State Agency Psychological Consultants

Merritt also argued that the ALJ erred in his discussion of the opinions of the state agency psychological consultants.  (DN 12, at PageID # 936.)  She argued that their opinions are inconsistent with "the examining consultant[']s report," by which the undersigned presumes he means CE Brown's opinion, and that "[t]he ALJ did not resolve the contradiction in accordance with SSR 96-8p." (*Id.*)  The state agency psychological consultants found that Merritt had "non-severe mental impairments, and the ALJ found their opinions persuasive because "they [we]re consistent with largely benign mental health treatment notes, evidence of unskilled work activity, and numerous activities of daily living, which show [Merritt] [ ] can perform unskilled work." (R. at 26.)  Contrary to Merritt's argument, the ALJ did state the reason for the different treatment afforded the state agency psychological consultants' opinions and that of CE Brown: he found that CE Brown's opinion was unsupported by the record but that the state agency consultants opinion were.  Thus, he provided an explanation for any inconsistency.  Merritt failed to provide any more substantive argument regarding why the ALJ's conclusion was not supported by substantial evidence, and the undersigned declines to make one for her.  Accordingly, the undersigned finds the ALJ's treatment of the state agency psychological consultant's opinions supported by substantial evidence and in compliance with the applicable regulations.

### e)      Substantial Evidence Generally

Based on the conclusions above, the undersigned finds that the ALJ's RFC determination was supported by substantial evidence.  Thus, this Court's role is not to second-guess his conclusions.  *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman,* 693 F.3d at 714.

### 2.    Finding Nos. 6 and 7

Merritt also argued that the ALJ's Finding Nos. 6 and 7 were incorrect.  (DN 12, at PageID # 936-37.)   Her entire argument on these points appears to be that because the ALJ's RFC determination was not supported by substantial evidence these subsequent determinations were also in error for the same reasons refuted above.  (*Id.*)  The undersigned has determined above that the ALJ's RFC determination was supported by substantial evidence.   Accordingly, Merritt's arguments regarding Finding Nos. 6 and 7 are without merit.

## III.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

cc:    Counsel of Record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all Parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).